**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| DOROTHY LONDERGAN, individually and on behalf of others similarly situated,<br><br>     Plaintiff,<br> -v-<br><br>IKO MANUFACTURING INC., a Delaware corporation; IKO INDUSTRIES INC., a Delaware corporation;  IKO INDUSTRIES LTD., a Canadian corporation; IKO MIDWEST INC., an Illinois corporation; and IKO PRODUCTION INC., a Delaware corporation,<br><br>     Defendants. | Case No.  12-11151<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**
**AND JURY DEMAND (EQUITABLE RELIEF SOUGHT)**

   **1.**  **NOW COMES** Plaintiff, DOROTHY LONDERGAN, on behalf of herself and a class of all other persons similarly situated (collectively "the Class"), by and through his attorneys, Holland, Groves, Schneller & Stolze, LLC, and for her Complaint against Defendants, IKO Manufacturing Inc., IKO Industries Inc., IKO Industries Ltd., or IKO Midwest Inc., and IKO Production Inc., states as follows:

## NATURE OF ACTION

**A. Background**

2.      This is a consumer class action on behalf of all persons and entities that purchased organic-based or matted shingles manufactured and/or distributed under various trade names by IKO Manufacturing Inc., IKO Industries Inc., IKO Industries Ltd., or IKO Midwest Inc., and IKO Production, Inc. (collectively "IKO" or "Defendant(s)").

3.      Upon information and belief, IKO sold or distributed organic shingles throughout the United States, but primarily in the northern tier states and portions of the south-eastern United States between approximately 1979 and 2007 (hereinafter collectively "Shingles" or "IKO Shingles")

4.      All IKO Shingles are manufactured using the same basic formula: a base layer of organic felt saturated with asphalt, a middle layer of an oxidized asphalt coating, and a top layer of mineral granules with a strip of asphalt sealant.

5.      Defendants manufactured and marketed  its Shingles under various brands and product names including but not limited to, Château, Renaissance XL, Aristocrat, Total, Armour Seal, Superplus, Armour Lock, Royal Victorian, New Englander, Imperial Seal, Cathedral XL, Ultralock 25, Armour Plus 20, Armour Tite, Cambridge Ultra Shadow, Cathedral XL, Crowne 30, Vista, Supreme, and Skyline for sale nationwide.  Defendants marketed and sold the organic Shingles to tens of thousands of consumers throughout the United States.

6.      IKO markets and warrants all the Shingles as durable, and as offering long-lasting protection for a specified life ranging from 20 to 50 years, or in some cases, for a lifetime. The industry and consumers recognize the warranty nomenclature as having meaning

2

as a shingle with a 25-year warranty is referred to as a "25-year shingle." Additionally, shingles with a 20-year warranty are generally priced at a lesser amount than shingles with a 50-year warranty.

7.      IKO's sales brochures and marketing literature, which were widely distributed to building and roofing professionals who installed shingles and generally available to all Plaintiff and the Class at the time of sale, state the Shingles are, among other things, "[t]ime-tested and true" and "an excellent choice for exceptional roofing value." IKO's Shingles have not stood the test of time and, given the early and severe deterioration that requires premature tear off and replacement, have not proven to be of value when compared to fiberglass shingles.

8.      IKO described its warranty in widely distributed documents to building and roofing professionals who installed shingles and documents generally available to the Plaintiff and the Class as "IRON CLAD" and further claimed IKO was "Setting the Standard" for "quality, durability, and innovation." IKO's Shingles have not lived up to that promise.

9.      IKO represented to Plaintiff and the Class in documents generally available to the public that its shingles would last for a specified period of time without problems, or the company would remedy the situation. IKO make this representation before purchase and at the time of purchase via sales brochures, marketing materials (including but not limited to store displays, sales seminars, and training materials), and on the Shingles' packaging.

10.     The Shingles manufactured and sold by IKO are defectively designed and manufactured such that they fail prematurely causing damage to the underlying structures (including roof, structural elements, interior walls and ceilings) and other property of Plaintiff and members of the Class. The Shingles are non-conforming.

3

11.     The defects present in IKO Shingles are so severe that Plaintiff and members of the Class must repair or replace their roofs sooner than reasonably expected by ordinary consumers who purchase shingles generally and by consumers who purchased these Shingles specifically.

12.     All of IKO's Shingles are uniformly defective such that Plaintiff's and Class members' Shingles are failing before the time periods advertised, marketed, and guaranteed by IKO or otherwise expected by ordinary consumers purchasing Shingles.

13.     IKO knew or reasonably should have known the Shingles are defective as designed and manufactured such that they fail prematurely due to moisture invasion. The organic materials contained in the Shingles are susceptible to becoming wet, moist, saturated, or otherwise invaded by water. Further degradation is caused when the wet, moist, or saturated organic material goes through repeated freeze and thaw cycles. The degradation continues as the Shingles lose the ability to hold granules further subjecting the organic content of the Shingles to moisture. Shingles are then further degraded when subjected to the sun as the drying of the content eventually causes the Shingles to lose shape and deform. The outward manifestation of the Shingle deterioration and deformation is cracking, curling, blistering, fishmouthing, clawing, and discoloration. At the extreme, the Shingles break at the edges or blow off roofs. In short, the Shingles do not perform in accordance with the reasonable expectations of consumers that such products be durable and suitable for use as a roofing product.

14.     The following photos, attached hereto in thumbnail form and in full as **Exhibit A**, are a sampling of the problems Plaintiff and the Class have experienced with their

IKO Shingles, including a thumbnail interior picture of Plaintiff's home showing the damage to Plaintiff's ceiling:

**B. IKO's Failure to Comply with the ASTM D225 Industry Standard**

15.     IKO represents to the public that its organic shingles meet ASTM D225 qualities for organic asphalt roofing shingles. IKO marks its product packages with an ASTM D225 stamp, its product specification sheets state that the products meet ASTM D225, and IKO's marketing materials state that its shingles meet ASTM D225 standards. Additionally, IKO's marketing materials unequivocally state that its shingles meet ASTM D225 standards.

16.     ASTM D225 is required by building codes and consumers expect that their shingles will meet code. The ASTM D225 standard requires that a manufacturer test its shingle according to a protocol outlined in a companion standard identified as ASTM D228.

17.     Despite its uniform and consistent representations to consumers, suppliers, and roofers, IKO did not test the shingles purchased by Plaintiff or the putative class to ensure that they satisfied ASTM D225. IKO never informed consumers that it was not performing ASTM D228 testing.

18.     IKO did not perform ASTM D228 testing in the ordinary course of business. And the testing actually performed by IKO was so inadequate that it does not yield the data necessary to determine whether a particular shingle or a particular lot of shingles meets the industry standard.

19.     The IKO organic shingles purchased by Plaintiff and putative class members suffer from a common defect in that they fail to satisfy ASTM D225 requirements. Specifically, IKO organic shingles prematurely show the kind of deterioration that is expected

in shingles three times older than they actually are because the saturant, top coating, and mineral fines make the shingles abnormally sensitive to moisture. This common defect causes IKO shingles to lose surfacing (granule loss), and fissure (crack) and fishmouthing (bending/curling).

**C. IKO's Warranty**

20.     IKO sells warranties with its Shingles. The warranties are marketed and create an expectation within the industry and by ordinary consumer purchases that the Shingles will last as long as the warranty period.  The warranty furthers these expectations by guaranteeing that a Shingle will last for a specified period of time.  The Class was generally charged more to purchase Shingles with a Warranty as the warranty period increased in length thereby creating the expectation that a longer warranty period advertised and guaranteed had meaning.

21.     IKO established a warranty period to be advertised and guaranteed for its Shingles without conducting appropriate testing to determine if the Warranty period was supported by actual or simulated use.  As to some of the Shingles, it appears that the warranty period increased in duration without IKO making substantial changes to the design or manufacturing process of its Shingles and without further or appropriate testing.

22.     IKO did not use a process or formula for determining the length of its warranties, but rather extended the length of warranties as the business environment changed so that IKO would not be put at a marketing disadvantage vis-à-vis its competitors.

23.     Generally, as IKO's competitors began to offer longer warranty periods for similar shingles, IKO lengthened the warranty period of its Shingles without adequate or appropriate testing to determine if the increase of warranty was justified, supportable, or otherwise true.

**D. IKO's Handling of Warranty Claims**

24.     IKO uses an overly burdensome warranty claims process that is designed to deter warranty claimants from filing, and reduce the number of "valid" claims that it receives. Much of the information that IKO requires is not available to homeowners, especially those who purchased a new home from a builder, or were not the original owners of the roof.

25.     IKO will not consider a warranty claim until a customer submits *all* of the following information to the company:

   a.  Proof of purchase of an IKO product indicating the type of shingle, quantity, and date in which a roof was applied;

   b.  Proof of purchase indicating the claimant is the original owner of the home;

   c.  Date shingles were applied;

   d.  Number of shingles applied;

   e.  Number of shingles involved in the claim;

   f.  Type of roof deck;

   g.  The number of layers of shingles on the roof;

   h.  The slope of the roof deck;

   i.  The number of vents on the roof;

   j.  Photographs of the roof that were not taken from a digital camera; and

   k.  Two full shingle samples (which requires a roofing professional to carefully remove in-service shingles from the claimant's roof).

26.     Instead of providing compensation based upon the terms of the warranty, IKO intentionally misleads warranty claimants, including Plaintiff and the Class, by requiring them

7

to sign a Goodwill Release of Warranty (hereinafter "Goodwill Release") in exchange for cash compensation.

27.     The consideration offered by IKO in exchange for a signed Goodwill Release is woefully inadequate to compensate claimants for IKO's defective Shingles because it does not cover the full cost of replacement shingles, labor, disposal, or other related costs incurred by Plaintiff and the Class.

28.     The Goodwill Release is not compensation under the terms of the warranty, but rather "represents the compromise of a disputed claim." In essence, it is IKO's routine business practice to dispute every warranty claim submitted to the company, even though it had actual or constructive notice that its Shingles are defective pursuant to their very own requirements. A sample of IKO's Goodwill Release is attached hereto as **Exhibit B**.

29.     The Goodwill Release operates as a waiver of the warranty, and releases IKO from "any and all claims, causes of action, agreements, promises, damages and demands, … of any kind or nature whatsoever … which the [warranty claimant] ever had or now has against IKO … ." **Exhibit B**.

30.     The Goodwill Release is IKO's attempt to "buy off" any future claims relating to its Shingles and relieve itself of the burden and responsibility of future warranty claims concerning any possible remaining Shingles on a warranty claimant's roof.

31.     The consideration offered for an executed Goodwill Release is based upon a fraction of the cost of replacing only the shingles that exhibit the defect at that time, but the Goodwill Release waives the warranty on the entire roof, regardless of whether the claimant was compensated for the release.

**E. IKO's On-going Refusal to Notify Its Customers of the Defects Associated With Its Shingles**

32.    Since 1984, IKO has received thousands of warranty claims alleging a manufacturing or design defect in the Shingles.

33.    A substantial percentage of all warranty claims received by IKO relate to its organic Shingles.

34.    An inordinate percentage of all warranty claims denied by IKO relate to claims made about the Shingles.

35.    Despite receiving a litany of complaints from consumers, such as Plaintiff and other members of the Class, IKO has refused to convey effective notice to consumers about the defects, and refused to repair defective roofs fully or repair the property damaged by the premature failure of its product.

36.    IKO's response to customers' warranty submissions is woefully inadequate under these circumstances in that it limits Plaintiff's and Class members' recovery to replacement costs of individual Shingles piece by piece and excludes costs of labor to replace the Shingles.

37.    The average compensation paid on a non-organic shingles claim is greater than the average compensation paid on an organic Shingles claim.

**F. IKO's Acts and Omissions Have Damaged Plaintiff and the Class**

38.    As a result of the defects and failures alleged herein, Plaintiff and the Class have suffered actual damages. The Shingles on their homes, buildings, and other structures have and will continue to fail prematurely compared to the time expected by ordinary consumers, the time marketed by IKO, and the time warranted by IKO, resulting in damage to

the underlying roof and housing structure and requiring them to expend thousands of dollars to repair the damage associated with the incorporation of the Shingles into their homes, buildings, and other structures, and to prevent such damage from continuing.  Damage caused by the defective Shingles includes, but is not limited to: damage to underlying felt, damage to structural roof components (including the rotting and degradation of plywood sheathing, trusses, and rafters), damage to plaster and sheetrock, and damage to walls, ceiling, and other components either as a result of the Shingles themselves and at the time when the Shingles are removed and replaced.

39.     Because the defects in the Shingles are latent and not detectable until manifestation, Plaintiff and the Class members were not reasonably able to discover their Shingles were defective until after installation, despite the exercise of due diligence.  Indeed, at the time of first sale, building and construction professionals would not be able to detect the latent defect unless they subjected the Shingles to their own testing, modeling, or analysis.

40.     The relatively small size of the typical individual Class member's claims, and because most homeowners and/or property owners have only modest resources, makes it unlikely that individual Class members could afford to seek a full and fair recovery against IKO on their own.  This is especially true in light of the size and resources of IKO.  A class action is, therefore, the only reasonable means by which Class members can obtain relief from these Defendants.

41.     The organic asphalt Shingles manufactured and sold by IKO, are defectively designed and manufactured such that they fail prematurely causing damage to the property of Plaintiff and members of the Class and forcing them to repair or replace their roofs sooner than reasonably expected, than marketed, and than warranted.

10

42.     Plaintiff seeks to recover, for herself and the Class, the costs of repairing the damage to their property and replacing their roofs, or injunctive relief forcing IKO to replace their defective roofs.

## PARTIES

43.     At all relevant times Plaintiff and class representative Dorothy Londergan was a citizen of Rochester, Michigan.

44.     Ms. Londergan purchased IKO Shingles in 1998 and the Shingles were installed on the roof of her personal residence shortly thereafter.

45.     At the time Ms. Londergan purchased the IKO Shingles, IKO represented to Ms. Londergan that the Shingles have a useful life of at least 25 years, and Ms. Londergan reasonably expected that the Shingles would last that long.

46.     Ms. Londergan first suspected a problem with her Shingles in 2011 when she noticed a leak on the ceiling in her stairway.

47.     In April 2011, Ms. Londergan contacted IKO to make a warranty claim, and at that time, she notified IKO that his Shingles are defective.

48.     In response to the warranty claim, IKO offered to pay Ms. Londergan $693.00. In order to receive this payment, IKO required Ms. Londergan to sign a "Goodwill Release of Warranty" that would waive any claim to further compensation due or owing Ms. Londergan resulting from IKO's defective product. Ms. Londergan refused to return the "Goodwill Release of Warranty" to IKO.

49.     On or about February 2012, Ms. Londergan received a repair estimate to correct the problems caused to her roof by IKO's Shingles. This is a cost that would not be

expected to be incurred for at least a decade had the consumer expectations been met that were formed based upon the marketing and warranty of the Shingles.

50.    Ms. Londergan had no reasonable way to discover the Shingles were defective until shortly before filing this lawsuit.

**F.    IKO Defendants**

51.    Defendant IKO Manufacturing Inc. is a Delaware corporation with significant business operations in Kankakee, Illinois, where it manufactures, sells, markets, and services IKO Shingles.

52.    Defendant IKO Industries Ltd. is an Alberta corporation and leading North American manufacturer and distributor of roofing materials and the parent company of Defendant IKO Manufacturing.  IKO Industries Ltd. is the owner of several patents that may apply to the Shingles manufactured by IKO Manufacturing.  The company operates manufacturing plants in Canada, and its Shingles were distributed in the United States.

53.    Defendant IKO Midwest, Inc. is a Delaware corporation with significant business operations located in Kankakee, Illinois.  IKO Midwest, Inc. manufactures, distributes, and sells IKO Shingles throughout the United States.

54.    Defendant IKO Industries, Inc. is a Delaware corporation that imports Canadian-made IKO Shingles to the United States.

55.    Defendant IKO Production, Inc. is a Delaware corporation with significant business operations in Wilmington, Delaware, where it manufactures, distributes, or sells IKO Shingles.

56.    Customer complaints and warranty claims made regarding IKO shingles sold in the United States have been processed in Illinois since 1989.

57.     All marketing of IKO shingles in the United States, including distribution of advertising as well as marketing and promotional materials, has been managed by offices in Illinois.

58.     Since 1987, the chief financial officer for IKO's United States operations has maintained his principal office in Illinois.

59.     Between 1981 and 1995, the President for IKO's United States operations maintained an office in Illinois.

<u>**JURISDICTION AND VENUE**</u>

60.     IKO, through its various subsidiaries and affiliates, operates manufacturing plants in the United States, Canada, and Europe and has significant business operations in Kankakee, Illinois, where it manufactures, sells, markets, and services IKO Shingles and has sufficient contact with Illinois or otherwise intentionally avails itself to the laws and markets of Illinois, so as to sustain this Court's jurisdiction over Defendants. It appears that this facility is also responsible for evaluating warranty claims, determining the warranty program to be offered, and otherwise processing customer complaints about the Shingles.

61.     Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d) because the vast majority of class members are citizens of a state different from the home state of Defendants, and, upon information and belief, the amount in controversy exceeds Five Million Dollars ($5,000,000.00).

62.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 *et seq.* because the Plaintiff resides in this judicial district.

## CLASS ACTION ALLEGATIONS

63.     This action is brought and may be maintained as a nationwide class action

pursuant to Federal Rule of Civil Procedure 23, and case law there under, on behalf of

Plaintiff and all others similarly situated, with the Nationwide Class defined as follows:

> All individuals and entities that have owned, own, or acquired
> homes, residences, buildings or other structures physically located
> in the United States, on which organic IKO shingles are or have
> been installed since 1979.  Organic IKO shingles is defined as all
> organic shingles manufactured or distributed by Defendants.
> Excluded from the Class are Defendants, any entity in which
> Defendants have a controlling interest or which has a controlling
> interest of Defendants, and Defendants' legal representatives,
> assigns and successors.  Also excluded are the judge to who this
> case is assigned and any member of the judge's immediate family.

64.     Alternatively or in addition to the Nationwide Class claims, Plaintiff brings, as

applicable to each of the various States where the laws are similar to each of the states in

which a named Plaintiff resides, causes of action one, two, three, five, and seven under

Federal Rule of Civil Procedure 23 on behalf of herself and State Sub-Classes defined as:

> All individuals and entities that have owned, own, or acquired
> homes, residences, buildings or other structures physically located
> in the applicable State, on which organic IKO shingles are or have
> been installed since 1979.  Organic IKO shingles is defined as all
> organic Shingles manufactured or distributed by Defendants.
> Excluded from the Class are Defendants, any entity in which
> Defendants have a controlling interest or which has a controlling
> interest of Defendants, and Defendants' legal representatives,
> assigns and successors.  Also excluded are the judge to who this
> case is assigned and any member of the judge's immediate family.

65.     Plaintiff reserves the right to re-define the Class(es) prior to class certification.

66.     While the precise number of Class members is unknown to Plaintiff, upon

information and belief, Plaintiff believes the number is well in excess of 1,000 and the Class

likely includes many thousands such that joinder is impracticable.  The true number of Class members is likely known by Defendants.  Disposition of these claims in single class action will provide substantial benefits to all parties and the Court.

67.     The claims of the representative Plaintiff are typical of the claims of the Class in that the representative Plaintiff, and all Class members, own homes, residences, or other structures on which defective Shingles manufactured by IKO have been installed.  Those Shingles have failed, and will continue to fail, prematurely.  The representative Plaintiff, like all Class members, has been damaged by IKO's conduct in that he has incurred or will incur the costs of repairing or replacing his roof and repairing the additional property damaged by the Shingles' premature failure.  Furthermore, the factual bases of IKO's conduct is common to all Class members and represents a common thread of deliberate, fraudulent and negligent misconduct resulting in injury to all members of the Class.

68.     There are numerous questions of law and fact common to Plaintiff and the Class.  Those questions predominate over any questions that may affect individual Class members, and include the following:

a.     Whether IKO Shingles are defective in that they fail prematurely and are not suitable for use as an exterior roofing product for the length of time advertised, marketed and warranted;

b.     Whether the Shingles are defectively designed or manufactured;

c.     Whether IKO knew or should have known of the defective nature of the Shingles;

d.     Whether the Shingles failed to perform in accordance with the reasonable expectations of ordinary consumers;

e.     Whether IKO properly instructed consumers about the likelihood of premature failure;

f.      Whether the Shingles fail to perform as advertised and warranted or expected by an ordinary consumer;

g.      Whether IKO's conduct in marketing and selling its Shingles involved misrepresentations, intentional omissions, or was otherwise unfair and deceptive.

h.      Whether Plaintiff and the Class are entitled to compensatory, exemplary and statutory damages, and the amount of such damages;

i.      Whether IKO should be declared financially responsible for notifying all Class members about their defective Shingles and for all damages associated with the incorporation of such Shingles into Class members' homes, residences, buildings, and other structures; and

j.      Whether IKO has changed or altered is warranty program without notice the Plaintiff and the Class.

69.     Plaintiff will fairly and adequately protect the interests of the Class.  Plaintiff has retained counsel with substantial experience in prosecuting statewide, multistate and national consumer class actions, actions involving defective products, and specifically, actions involving defective construction materials.  Plaintiff and his counsel are committed to prosecuting this action vigorously on behalf of the Class they represent, and have the financial resources to do so.  Neither Plaintiff nor his counsel has any interest adverse to those of the Class.

70.     Plaintiff and the members of the Class have suffered and will continue to suffer harm and damages as a result of IKO's conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Absent a class action, the vast majority of the Class members likely would find the cost of litigating their claims to be prohibitive, and would have no effective remedy at law.  Because of the relatively small size of the individual Class member's claims, it is likely that only a few Class members could afford to seek legal redress for IKO's conduct.  Further, the cost of litigation could well equal

or exceed any recovery. Absent a class action, Class members will continue to incur damages without remedy.  Class treatment of common questions of law and fact would also be superior to multiple individual actions or piecemeal litigation, in that class treatment would conserve the resources of the courts and the litigants, and will promote consistency and efficiency of adjudication.

### ESTOPPEL FROM PLEADING THE STATUTE OF LIMITATIONS

71.      IKO knew or reasonably should have known the Shingles were defective prior to the time of sale, and intentionally concealed that material information and the truth concerning their product from Plaintiff and the general public, while continually marketing the Shingles as dependant products.  Defendants' acts of fraudulent concealment include failing to disclose that its Shingles were defectively manufactured and would deteriorate in less than their expect lifetime, leading to damage to the very structures they were purchased to protect.

72.      Because the defects in the Shingles are latent and not detectable until manifestation, Plaintiff and the Class members were not reasonably able to discover their Shingles were defective and unreliable until after installation, despite their exercise of due diligence.

73.      Plaintiff had no reasonable way to discover this defect until shortly before Plaintiff filed his original complaint.

74.      Defendants had a duty to disclose that its Shingles were defective, unreliable and inherently flawed in their design and/or manufacturer.

17

## FIRST CAUSE OF ACTION AGAINST ALL DEFENDANTS

### (Breach of Express Warranty)

75.     Plaintiff incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint.

76.     Defendants marketed and sold their Shingles into the stream of commerce with the intent that the Shingles would be purchased by Plaintiff and members of the Class.

77.     Defendants expressly warranted that its Shingles are permanent, impact resistant, and would maintain their structural integrity.  Defendants' representatives through its written warranties regarding the durability of, and the quality of the Shingles created express warranties which became part of the basis of the bargain Plaintiff and members of the Class entered into when they purchased the Shingles.

78.     Express warranties created by IKO go beyond the limited warranties IKO relies upon. IKO also creates express warranties on the Shingles packaging and in product brochures and marketing materials.

79.     Defendants expressly warranted that the structural integrity of the Shingles purchased by Plaintiff and Class members would last at least 25 years and as long as a lifetime.

80.     Defendants breached their express warranties to Plaintiff and the Class in that Defendants' Shingles are neither permanent nor impact resistant and did not, and do not, maintain their structural integrity and perform as promised.  Defendants' Shingles crack, split, curl, warp, discolor, delaminate, blow off the roof, deteriorate prematurely, and otherwise do not perform as warranted by Defendants; and they have caused or are causing damage to the

underlying roof elements, structures or interiors of Plaintiff's and Class members' homes, residences, buildings and structures.

81.     Defendants' warranties fail their essential purpose because they purport to warrant that the Shingles will be free from structural breakdown for as much as 25 years to a lifetime when, in fact, Defendants' Shingles fail far short of the applicable warranty period.

82.     Moreover, because the warranties limit Plaintiff's and Class members' recovery to replacement of the Shingles piece by piece, with replacement labor not included, Defendants' warranties are woefully inadequate to repair and replace failed roofing, let alone any damage suffered to the underlying structure due to the inadequate protection provided by the IKO Shingles.  The remedies available in Defendants' warranties are limited to such an extent that they do not provide a minimum adequate remedy.

83.     The limitations on remedies and the exclusions in Defendants' warranties are unconscionable and unenforceable.

84.     Defendants have denied or failed to pay in full the warranty claims or has not responded to warranty claims.

85.     As a result of Defendants breach of its express warranties, Plaintiff and the Class have suffered actual damages in that they purchased and installed on their homes and other structures an exterior roofing product that is defective and that has failed or is failing prematurely due to moisture penetration.  This failure has required or is requiring Plaintiff and the Class to incur significant expense in repairing or replacing their roofs.  Replacement is required to prevent on-going and future damage to the underlying roof elements, structures or interiors of Plaintiff's and Class members' homes and structures.

86.     Plaintiff on behalf of herself and all others similarly situated, demands judgment against Defendants for compensatory damages for herself and each member of the Class, for the establishment of the common fund, plus attorney's fees, interest and costs.

## SECOND CAUSE OF ACTION AGAINST ALL DEFENDANTS

### (Breach of Implied Warranties of Merchantability and Fitness for a Particular Purpose)

87.     Plaintiff incorporates by reference each of the allegations contained in all of the preceding paragraphs of this Complaint.

88.     At all times mentioned herein, Defendants manufactured or supplied IKO Shingles, and prior to the time said Shingles were purchased by Plaintiff, Defendants impliedly warranted to Plaintiff, and to Plaintiff's agents, that the product was of quality and fit for the use for which it was intended.

89.     Plaintiff and Plaintiff's agents relied on the skill and judgment of the Defendants in using the aforesaid product.

90.     The product was unfit for its intended use and it was not of merchantable quality, as warranted by Defendants, in that it had propensities to break down and fail to perform and protect when put to its intended use.  The aforesaid product caused Plaintiff to sustain damages as herein alleged.

91.     The product was similarly unfit for its particular purpose. IKO manufactured its Shingles in a cold weather climate, and distributed, marketed, and sold the Shingles in cold weather climates. IKO knew, or should have known, that its Shingles would be subjected to sub-zero temperatures, snow, and sleet and that the Shingles would be subjected to freeze-thaw cycles for a substantial period of each year.

92.     After Plaintiff was made aware of Plaintiff's damages as a result of the aforesaid product, notice was duly given to Defendants of the breach of said warranty.

93.     IKO failed to provide adequate remedy and added additional terms to the warranties which independently cause the purported warranty to fail its essential purpose, thereby permitting remedy under implied warranties.

94.     As a direct and proximate result of the breach of said warranties, Plaintiff and the Class members suffered and will continue to suffer loss as alleged herein in an amount to be determined at trial.

95.     Plaintiff on behalf of herself and all others similarly situated, demand judgment against Defendants for compensatory damages for herself and each member of the Class, for the establishment of the common fund, plus attorney's fees, interest and costs.

## THIRD CAUSE OF ACTION AGAINST ALL DEFENDANTS

### (Violation of Michigan Consumer Protection Act)

96.     Plaintiff incorporates by reference the allegations contained in the foregoing paragraphs of this Complaint.

97.     The conduct described in this Complaint constitutes a violation of the Michigan Consumer Protection Act, M.C.L.A. § 445.901, *et seq.*, as unfair, unconscionable or deceptive methods, acts or practices in the conduct of trade or commerce are unlawful. *See* M.C.L.A. § 445.903 and substantially similar state consumer protection statutes.

98.     Defendant engaged in the unfair, unconscionable, and deceptive acts or practices, as set forth in this Class Action Complaint, in the conduct of trade or commerce.

99.     IKO engaged in unfair, unconscionable, and deceptive acts or practices in violation of the Michigan Consumer Protection Act when it (1) represented the Shingles were

durable and free of defects when, at best, it lacked credible evidence to support  those claims, and, at worst, knew the Shingles would fail prematurely, were not suitable for use as an exterior roofing product, and otherwise were not as warranted and represented by IKO; (2) failed to disclose to, or concealed from, consumers material facts about the defective nature of the Shingles; (3) failed to disclose its own knowledge of the defective nature of the Shingles; and (4) limited its warranty obligations in an unfair and unconscionable way in light of its failure to disclose the defective nature of the Shingles.

100.    IKO either knew or should have known its Shingles were defective, would fail prematurely and were not as warranted and represented by Defendants.

101.    IKO's conduct and omissions described herein repeatedly occurred in IKO's trade or business and were capable of deceiving a substantial portion of the consuming public.

102.    The facts concealed or not disclosed by IKO are material facts in that Plaintiff and any reasonable consumer would have considered those facts important in deciding whether to purchase the Shingles or purchase homes or structures with roofs constructed with the Shingles.  Had Plaintiff and the Class known the Shingles were defective and would fail prematurely they would not have purchased the Shingles or they would have either negotiated additional warranty coverage, negotiated a lower price to reflect the risk or simply avoided the risk all together by purchasing different shingles.

103.    Defendants intended that Plaintiff and the Class would rely on the deception by purchasing its shingles, unaware of the undisclosed material facts.  This conduct constitutes consumer fraud within the meaning of the various consumer protection statutes.

104.    IKO's unlawful conduct is continuing, with no indication that IKO will cease.

105.    As a direct and proximate result of the deceptive, misleading, unfair and unconscionable practices of the Defendants set forth above, Plaintiff and Class Members are entitled to actual damages, compensatory damages, penalties, attorney's fees and costs as set forth under the Michigan Consumer Protection Act and Michigan law.

106.    The Defendants' deceptive, misleading, unfair and unconscionable practices set forth above were done willfully, wantonly and maliciously entitling Plaintiff and Class members to an award of punitive damages.

## FOURTH CAUSE OF ACTION AGAINST ALL DEFENDANTS

### (Breach of Contract)

107.    Plaintiff incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint.

108.    Plaintiff and the Class members have entered into certain contracts and warranty agreements with Defendants, including an express warranty.  Pursuant to these contracts and agreements, including the express warranty, Defendants would provide Plaintiff and the Class members with Shingles that were of merchantable quality and fit for the use for which they were intended.  Defendants were further obligated pursuant to the express warranty to repair or replace any defects or problems with the Shingles that Plaintiff and the Class members experienced.  In exchange for these duties and obligations, Defendants received payment of the purchase price for these Shingles from Plaintiff and the Class.

109.    Plaintiff and the Class satisfied their obligations under these contracts, warranties, and agreements.

110.    Defendants failed to perform as required by the express warranty and breached said contracts and agreements because they provided Plaintiff and the Class with Shingles that

were defective and unfit for their intended use and failed to appropriately repair or replace the Shingles.

111.    As a result of the foregoing, Plaintiff and the Class members are entitled to compensatory damages in an amount to be proven at trial.

### FIFTH CAUSE OF ACTION AGAINST ALL DEFENDANTS

### (Fraudulent Concealment)

112.     Plaintiff incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint.

113.    At all times mentioned herein, Defendants, through its experience, were in a position of superiority to Plaintiff and the class members and as such had the duty and obligation to disclose to Plaintiff the true facts and their knowledge concerning the IKO Shingles; that is that said product was defective, would prematurely fail, and otherwise were not as warranted and represented by Defendants. Defendants made the affirmative representations as set forth in this Complaint to Plaintiff, the Class, and the general public prior to the date Plaintiff purchased the IKO Shingles, while at the same time concealing the material defects described herein. All of these facts were material to consumers' (such as Plaintiff's) purchase decisions.

114.    The material facts concealed or not disclosed by IKO to Plaintiff and the Class are material facts in that a reasonable person would have considered those facts to be important in deciding whether or not to purchase IKO's Shingles.

115.    At all times mentioned herein, Defendants intentionally, willfully, and maliciously concealed or suppressed the facts set forth above from Plaintiff and with the intent to defraud as herein alleged.

116.    At all times mentioned herein, Plaintiff and members of the Class reasonably relied on Defendants to disclose those material facts set forth above.  If Defendants had disclosed the above facts to Plaintiff and Class and had they been aware of said facts, they would either negotiated additional warranty coverage, negotiated a lower price to reflect the risk or simply avoided the risk all together by purchasing different shingles

117.    IKO continued to conceal the defective nature of its Shingles even after members of the Class began to report problems.  Indeed, IKO continues to cover up and conceal the true nature of the problem.

118.    As a result of the previous and continued concealment or suppression of the facts set forth above, Plaintiff and the Class members sustained damages in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION AGAINST ALL DEFENDANTS

### (Negligence)

119.    Plaintiff incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint.

120.    Defendants had a duty to Plaintiff and the Class to exercise reasonable and ordinary care in the formulation, testing, design, manufacture, and marketing of the Shingles.

121.    Defendants breached their duty to Plaintiff and the Class by designing, manufacturing, advertising and selling to Plaintiff and the Class a product that is defective and will fail prematurely, and by failing to promptly remove the Shingles from the marketplace or to take other appropriate remedial action.

122.    Defendants knew or should have known that the Shingles were defective, would fail prematurely, were not suitable for use as an exterior roofing product, and otherwise were not as warranted and represented by Defendants.

123.    As a direct and proximate cause of Defendants' negligence, Plaintiff and the Class have suffered actual damages in that they purchased and installed on their homes, residences, buildings and other structures an exterior roofing product that is defective and that fails prematurely due to moisture penetration.  These failures have caused and will continue to cause Plaintiff and the Class to incur expenses repairing or replacing their roofs as well as the resultant, progressive property damage.

124.    Plaintiff on behalf of herself and all others similarly situated, demand judgment against Defendants for compensatory damages for herself and each member of the Class, for establishment of a common fund, plus attorney's fees, interest and costs.

## SEVENTH CAUSE OF ACTION AGAINST ALL DEFENDANTS

### (Unjust Enrichment)

125.    Plaintiff incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint.

126.    Substantial benefits have been conferred on Defendants by Plaintiff and the Class by purchasing IKO shingles, and Defendants have knowingly and willingly accepted and enjoyed these benefits.

127.    IKO either knew or should have known that the payments rendered by Plaintiff and the Class were given and received with the expectation that the IKO Shingles would perform as represented and warranted.  For IKO to retain the benefit of the payments under these circumstances is inequitable.

26

128.    Defendants' acceptance and retention of these benefits under the circumstances make it inequitable for Defendants to retain the benefit without payment of the value to the Plaintiff and the Class.

129.    Plaintiff and the Class are entitled to recover from Defendants all amounts wrongfully collected and improperly retained by Defendants, plus interest thereon.

130.    As a direct and proximate result of IKO's wrongful conduct and unjust enrichment, Plaintiff and the Class are entitled to restitution from, and institution of, a constructive trust disgorging all profits, benefits, and other compensation obtained by IKO, plus attorneys' fees, costs, and interest thereon.

## EIGHTH CAUSE OF ACTION AGAINST ALL DEFENDANTS

### (Declaratory and Injunctive Relief)

131.    Plaintiff incorporates by reference each of the allegations contained in the preceding paragraphs of this Complaint.

132.    Plaintiff, on behalf of herself and putative Class members, seek a Court declaration of the following:

  a.  All Defendants' Shingles manufactured from 1979 until the present have defects which cause them to fail and leak, resulting in water damage to property and the necessity of the removal and replacement of the Shingles;

  b.  All Defendants' Shingles manufactured from 1979 until the present have a defect in workmanship and material that causes failures;

  c.  Defendants knew of the defects in their Shingles and that the limitation contained in the warranties are unenforceable;

  d.  Defendants shall re-audit and reassess all prior warranty claim on their Shingles, including claims previously denied in whole or in part, where the denial was based on warranty or other grounds; and

e.  Defendants shall establish an inspection program and protocol to be communicated to Class members, which will require Defendants to inspect, upon request, a Class member's structure to determine whether a Shingle failure is manifest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, request the Court to enter judgment against IKO, as follows:

A.      Enter an order certifying the proposed Class (and subclasses, if applicable), designating Plaintiff as the named Class Representatives of the Class, and designating the undersigned as Class Counsel;

B.      Declare that IKO is financially responsible for notifying all Class members of the problems with IKO products;

C.      Enter an order enjoining IKO from further deceptive advertising, marketing, distribution, and sales practices with respect to IKO products, and requiring IKO to remove and replace Plaintiff's and Class members' roofs with a suitable alternative roofing material of Plaintiff's and Class members' choosing;

D.      Enter an award in favor of Plaintiff and the Class that includes compensatory, exemplary or punitive damages, and statutory damages, including interest thereon, in an amount to be proven at trial;

E.      Declare that IKO must disgorge, for the benefit of the Class, all or part of the ill-gotten profits it received from the sale of IKO materials, or order IKO to make full restitution to Plaintiff and the members of the Class;

F.      Enter an award of attorneys' fees and costs, as allowed by law;

G.      Enter an award of pre-judgment and post-judgment interest, as provided by law;

H.      Grant Plaintiff and the Class leave to amend the Complaint to conform to the evidence produced at trial; and

I.      Grant such other or further relief as may be appropriate under the circumstances.

### DEMAND FOR JURY TRIAL

Plaintiff, on behalf of herself and the members of the Class hereby demand a trial by jury of any and all issues in this action so triable.

Dated:  March 14, 2012          /s/ Eric D. Holland
                                Eric D. Holland –  (P67772)
                                R. Seth Crompton
                                HOLLAND, GROVES,
                                SCHNELLER& STOLZE
                                300 N. Tucker Blvd., Ste  801
                                St. Louis, MO 63101
                                (314)241-8111
                                (314)241-5554 (fax)
                                Email: eholland@allfela.com

| | | |
|---|---|---|
| Robert K. Shelquist | Clayton D. Halunen | Charles E. Schaffer |
| LOCKRIDGE GRINDAL | HALUNEN & | LEVIN FISHBEIN |
| NAUEN PLLP | ASSOCIATES | SEDRAN & BERMAN |
| Suite 2200 | 1650 IDS Center | Suite 500 |
| 100 Washington Avenue South | 80 South Eighth Street | 510 Walnut Street |
| Minneapolis, MN 55401 | Minneapolis, MN 55402 | Philadelphia, PA 19106 |
| (612) 339-6900 | (612) 605-4098 | (215) 592-1500 |
| (612) 339-0981 (fax) | (612) 605-4099 (fax) | (215) 592-4663 (fax) |

Christopher M. Ellis
Jon D. Robinson
BOLEN ROBINSON &
ELLIS
2nd Floor
202 South Franklin
Decatur, IL 62523
(217) 429-4296
(217) 329-0034 (fax)

Charles J. LaDuca
Michael J. Flannery
Brendan S. Thompson
CUNEO GILBERT &
LADUCA, LLP
507 C Street, NE
Washington, DC 20002
(202) 789-3960
(202) 789-1813 (fax)

Kim D. Stephens
TOUSLEY BRAIN
STEPHENS
1700 Seventh Avenue
Suite 2200
Seattle, WA 98101
(206)68205600
(206)682-2992 (fax)

Michael A. McShane
AUDET & PARTNERS,
LLP
221 Main Street, Suite 1460
San Francisco, CA 94105
Telephone: 415.568.2555
Facsimile: 415.576.1776

Shawn J. Wanta
BAILLON THOME
JOZWIAK MILLER &
WANTA
222 South Ninth St.
Suite 2955
Minneapolis, MN 55402
(612)252-3570
(612)252-3571 (fax)